Case number 13-5757, United States of America v. William L. Bost. Argument not to exceed 15 minutes per side. Mr. Isaacs, you may proceed for the appellate. Good afternoon. May it please the court, I'm Gregory Isaacs and I represent the appellate, Mr. Bost, and we have reserved 5 minutes for rebuttal. We are here pursuant to the denial of a motion to suppress by the district court in a Tennessee Rule of Criminal Procedure 11-A-2 plea. We have alleged that the district court erred in holding the first search of Mr. Bost lawful, in further holding there were two separate searches, and that the contraband found at the scene during the search was admissible. The facts start out with a very benign traffic stop. Mr. Bost was pulled over for three misdemeanor offenses, improper lane change, failure to have insurance, and a seat belt violation. The stop was really only pulled over for the first one because he didn't know the other two. Correct. The failure to properly change lanes. The in-car camera video depicts a garden variety stop. Mr. Bost stops his vehicle, the officer walks out, asks to see his identification, everything is going fine. Officer is polite, his demeanor is appropriate. Mr. Bost is responsive. Suddenly, when the officer looks in the car and finds three cell phones, the officer's demeanor changes dramatically. He becomes aggressive, he becomes loud, and then he begins shouting instructions at Mr. Bost. At that point, that's where the theory violation begins and is the genesis of the motion to suppress. The district court held that the intervening factor justifying the detention of Mr. Bost was having his hands out of plain view of the officer and failing to show his hands when asked to. Aside from that, and this is what is very significant about this case in looking at the constitutional scope of the search, the district court noted that before this command was given, basically everything was accomplished to justify writing a citation, not an arrest, which is required by Tennessee law pursuant to 5510207, and the stop would have been over. But there are three factors the court relied on. I have a question. I thought there was more than that. I thought at that point the officer had not yet checked with the records about the way they normally do. You check somebody's driver's license or their vehicle license to see whether there's other violations. I thought that step hadn't happened. Wasn't that part of the reasoning? The reasoning set forth by the district court and testified to by Officer Lane was basically he felt that his safety was at issue when Mr. Bost failed to show his hands, and then he immediately, the officer's demeanor changed, and he asked him to exit the vehicle. After he exited the vehicle, there was an exchange. He was immediately handcuffed. Guns were drawn. He threatened to tase my client. And at that point he called and asked for a records check of the vehicle. Okay, but if he hadn't yet asked for that records check when he thought his safety was being jeopardized, then he would have had to go back to his car and turn his back on somebody he thinks might have a weapon? Isn't that the scenario that the courts were thinking about? Well, respectfully, Judge Shirley focused on the fact that the officer's safety was the intervening factor that allowed the initial detention of Mr. Bost for the improper lane change to continue. And there were also three other factors that we'd like to address that were significant. I guess to round out Judge Rustani's question, I mean, if, I guess as a factual matter, can you just confirm yes or no whether the officer had completed the process of running his driver's license number in plate before the officer says Mr. Bost puts his hands towards the center console? Judge Keffler, to my recollection, is he had not, but I'm not sure what he did as he was following Mr. Bost. But if he hadn't, then none of this prolonged the stop, right? Because the officer's entitled to make sure there aren't any outstanding warrants or things like that. Absolutely, but the record of the video shows that his demeanor changed. He didn't importantly say, if you'll stay right here, I'm going to check your record, which is customary. Let me go run your license. Let me see if there are outstanding warrants. What happened, he said once he saw the three cell phones, he became suspicious. And this is what's significant about this case. If you look at United States v. Townsend, you look at United States v. Delano, three recent Sixth Circuit decisions, three cell phones along with other factors is not enough to justify reasonable suspicion for a Terry cell. At least from my point of view, and I don't think the court really relied on the cell phones to justify what happened thereafter, my watching of the video, and it's both a plus and a minus that now we have these videos, because then the reviewing court can see the same thing the lower court saw or that the policemen saw. As I saw it, he remained basically civil. I mean, he rousts him a little bit before that because he says, don't you know you have a turn signal, dude? Can't you turn the turn signal? And then he asks him about the cell phone, and he doesn't get terribly rank. And then all of a sudden, he says, keep your hands in sight. I mean, if he was not actually concerned, he's a hellacious actor. He didn't just start getting nasty with him. He acted exactly like a man who saw a potential danger to himself. And that's exactly what the trial judge is entitled to credit, and I'm not inclined to overturn it unless you can give me some good argument. Are you really saying that all of that was an act, that Mr. Boast was doing everything that he should? He didn't reach any place. He kept his hands in view, and the officer did all of that just to justify patting him down? And I agree. The in-car camera videos go both ways, and I've looked at it more than I've ever wanted to look at an in-car camera video. But he does ask about the cell phones. The demeanor's fairly appropriate. Mr. Boast is fairly appropriate. Why is the cell phone in the floor? Oh, and this is a drug interdiction officer. He testified that he looks for certain clues. Then suddenly, demeanor changes. He said his hand is by his console in a child's seat. Ask him to get out of the car. He becomes panicked. And then when he immediately gets out of the car, starts using profanity, puts your hands up, cuffs him immediately, all of this without running his record, without having any information. This man may have a weapon. But, you know, that question was before this court in the Blair decision. And in Blair, this court held that nervousness is not enough if a detainee is acting that way. And in Blair, the individual put his hand under his seat. And the Sixth Circuit held that that in and of itself, based on the totality of the circumstance and the scope of the original stop, wasn't enough. And that's what I think the court, in looking at whether this was reasonable under Torres-Ramos. In Blair, and correct me if I'm wrong, did they then simply not go ahead and do a search of the car as opposed to acting with respect to the pat-down? In Blair, they called the canines, and the court held that it wasn't appropriate to detain Mr. Blair. But there it was what I would call a civil detention. That is, they just kept it going, and they did a search. And the question was, did you have reasonable suspicion of some type of contraband, not did you have reasonable suspicion of fear for safety? Correct. And when we're looking at a Terry stop, you have to look, one, was it justified? And the Benilla case said you have to look at the purpose of the stop. This is someone that could have been a grandmother, grandfather, school teacher that had an improper lane change. Then you have to look at the totality of the circumstance. Well, what Rand says, it really doesn't matter what the real motivation was, as long as you actually had a violation. And from the video, you can see, in fact, it's not just an ordinary lane change. He's starting to go off the ramp, not wildly, but he comes back across several white lines that he shouldn't cross at all. Depending on the lane change, I think I would ask him to take a plea. I agree that that violation was there. But if you look at a reasonable detention, when his hand was there, and if you look at Blair, that is not enough. Look at Townsend and look at Delano on the three cell phone issue. Those are people that there were information they were leaving drug houses, people that had been armed or dangerous, people that had other indicia of drug dealing, Bibles, food wrappers, all this stuff, and this circuit held three cell phones isn't enough. Coupled with Blair, putting your... You said Blair, you said Townsend, you said... Delano. Delano. Delano. Signed our brief. But look at Blair when the hand under the seat was not enough to justify a Terry stop and frisk. Now, if you look at Benella, was the scope of a lane change case? How did it morph into an aggressive case? And if you watch that video, I will say why this was not a reasonable stop under the applicable law. Look at how he reacted to Mr. Bose chewing gum. He gets him from the vehicle, he slams him to the cruiser, jams his fingers down Mr. Bose's throat, and the only probable cause to do that, and that was dismissed by the district court, was because he was chewing gum. You juxtapose that with putting your hand by your child's car seat, and, Judge Boggs, in looking at that video, the time between when he said, move your hand, move your hand, and becomes frantic, I've tried to track it as a matter of seconds. I think it's less than a second or two. So if someone yells, again, nervousness is not enough, Saperstein, Andrews, Mesa... Counsel, I think your time has expired. It just did. Thank you. Thank you. Did he reserve it? May it please the court, Cynthia Davidson for the United States. The district court's denial of the motion to suppress should be affirmed in this case. The defendant confuses a Terry stop and a Terry pat. The stop in this case was supported by a reasonable cause, which the defendant agrees that it was. The stop happened because of the traffic violation. As he approaches the defendant to ask for his driver's license, proof of insurance, it's at that point where he's having his normal conversation with the defendant investigating the traffic violation that he notices various things. The things that he notices brings him to the conclusion that the defendant may be armed and dangerous. It is the basis for his Terry pat, and this is completely supported by both Arizona v. Johnson and Philadelphia v. Mims. He is perfectly appropriate once he has a legal stop supported by probable cause to ask the defendant to exit the vehicle and do a Terry pat if he can point to things which show him that the defendant is armed and dangerous. He saw the three cell phones. He saw that the defendant took an unreasonably long amount of time to pull over. It was a minute or so after he turned on his blinkers. The defendant ignored one of the cell phones. He saw the three cell phones on the floor, and he ignored one of the three cell phones. What do you mean he ignored it? Well, the officer asked him, Why do you have three cell phones? And he said, I have two. And then there was one at his foot, and he said, Well, you've got one thrown on the floor by your feet. And he acted like he didn't know what the officer was talking about. Well, under case law. I think he said, Oh. Oh. But the officer testified that he interpreted that as kind of an ignoring, that he didn't want to talk about that cell phone. Well, but under cases like Blair, if you did not have the going into the seat, would you really have enough based on all of that to consider him potentially dangerous? Based on Blair, you absolutely do, because when he asked him to step out of the car, it wasn't. Well, but he didn't ask him to step out of the car until after the incident with the hands going out of sight. No, Your Honor. I believe that the tape shows him step out of the car, and when he asked him to step out of the car, the defendant sticks his hand behind the seat. So he asked him to step out first, which he is entitled to do, but the cop doesn't get the taser and everything out until the hand disappears, you might say. Absolutely. So he asked him to step out. So in effect, but my question would be when he asked him, we don't need to go that far, but you're saying that you think even despite Blair, he could have patted him down even if he'd had his hands out all the time just based on the three cell phones and the length of time to pull over where he pulls onto an exit ramp. I mean, that's a pretty sensible thing to do on an I-40, isn't it? No, Your Honor. I am not saying that without the intervening factor of him putting his hand behind, I do not believe just on that that he had. Okay, that's what I was pressing you on. To me, the key factor is, and you can see by watching the tape, that he hides the hand. That to me, and I argue that at the lower court. But you can't see the hand. You can see the officer's reaction based on what he says, but unless he's making that up.  And so you hear the officer. You can't see the hand. He asked him to nicely step out of the car. I mean, if you look at the demeanor of the officer, as you mentioned, he is completely cordial until he says, show me your hands. And then he practically screams, show me your hands. And then he grabs his gun, show me your hands. And then the defendant does raise his hand and gets out of the vehicle. That, coupled with the other factors, gives rise to reasonable suspicion that the defendant is armed and dangerous. And as an aside, when the car was searched, there was a hidden compartment in that area. So that leads credence. Not only can you see the officer's reaction in the video, which like you said, he would have to be the best actor in the world, but there was something behind. But the cop doesn't know that. I mean, that's post-cop. Absolutely. I don't take any comfort from that. I cite that only to emphasize the officer's credibility. I'd like to ask a question about Blair. Yes. After the court in Blair basically gets rid of all these various reasons for a Terry stop, they then say Blair's act of reaching under the seats without more does not justify a Terry stop. How is our case different when, I mean, reaching between the seat and under the seat? Why doesn't this answer the question? Your Honor, I make the distinction of in Blair it was a Terry stop. It was the detaining. The officer was detaining the defendant in that case to get, I guess it's argued by the defendant, to obtain more evidence, wait for a drag dog to, but in this case. I agree. It was started as we're going to delay this to get the dogs here. Right. But if he had a reason to delay to do a weapons pat down, then it wouldn't really matter, would it, that the delay started as a delay to get the dogs there? If he had the right, you know, if he's entitled to do the weapons pat down because of reaching under the seat. Yes, Your Honor. And the distinction, I believe, in Blair is the timing of the reaching into the seat. In this case, the defendant was asked to exit the vehicle, and immediately before he exited the vehicle reached behind the seat in direct line of sight. And then the officer, again, yells at him multiple times. So that's the difference? It was he reached between the seat when he was asked to get out of the car. Yes, Your Honor. You're finding that's the difference? That is a significant difference that adds he was asked to get out of the car, and then instead of getting out of the car, as someone would, he immediately hides his hand from the view of the officer. In Blair, there was some furtive movement as he was being pulled over. It wasn't the distinct, after being given a direct order to exit the vehicle, to stick his hand behind his seat. Also, in Blair, wasn't the justification, in effect, reasonable suspicion of drugs and contraband, not reasonable suspicion of fear for the officer's safety? Yes, Your Honor. They did not react the way this policeman did. They didn't say, you know, pull guns and so on. They just added the furtive movement to whatever else they had, and that's a different kind of analysis. Yes, Your Honor. I totally agree, and I've been trying to make that distinction in my argument. It's completely different here because the Terry stop and exit did not extend the stop in any way. He asked him to exit the vehicle because of his fear for his safety, because they're on a busy interstate, as you can see, and then the intervening act of the defendant sticking his hand gives, along with the other factors, immediately raises the level of officer safety so that he goes to Terry Pat, which I think he's authorized to do. As he leaves the vehicle, he handcuffs again for officer safety. Officer Lane, at that point, had still not even called for backup, and he pats the defendant down. What's your reading of when he calls for backup? Because he keeps saying 136. I didn't know if that was a code or something.  My view of when he calls for backup, as I remember the tape, is once he gets him handcuffed, I believe that is when he gets on the phone and asks for backup, because that's the only time that he really had a moment to calm himself. Does he testify or suppose that at this point maybe he wants to go and check the license and so forth, but he doesn't want to leave him sitting handcuffed by himself? He did not testify to that. I think that at that point he is immediately wanting to make sure that this defendant does not have weapons. And if you look at the tape, it's... At that point he's already, when I say he's put him on the hood of the cruiser, he has patted him down, apparently not completely successfully, in the sense that he doesn't notice the drugs at that point. Exactly. And then he removes him and puts him on hit because the defendant says that he has a bad back. And so he leans him against the vehicle and he continues with his stop. And it is important to note that the backup and the drug dog arrive approximately nine minutes from the very beginning of the stop. So this is not a lengthy stop. Nothing that the officer does lengthens the stop outside of what would be a normal traffic stop. And at no point did he even have an opportunity to go and run the license plate and check his plate. Doesn't this make the whole thing come down to did he have adequate, reasonable suspicion to do the pat down, which ultimately, apparently, is what leads to dislodging at least the first bag of cocaine? Yes, Your Honor, I would say that he did. Had there been no struggle, they still would have noticed the cocaine on the ground at some point. Because it is true that if the rest of the struggle had not happened, one might assume that what would have happened is he would have run the license. There's no indication anything would have been bad. He'd say, okay, don't be a bad guy. Write him a ticket and unhandcuff him and let him go. Absolutely. And while he was there writing the ticket, within nine minutes, the drug dog arrived and would have alerted on the package of drugs that was sitting underneath the defendant's car. So even without, and I think the district court and the magistrate both correctly held, that even without the intrusion into the defendant's mouth, these drugs would have been discovered based on the initial tarry patent frisk. Are there any further questions? Not for me. Judge Rustani, anything else? No. Thank you. Thank you, Your Honor. Five minutes for rebuttal. Mr. Isaacs? Thank you. Respectfully, Ms. Davidson's recitation of Blair is incorrect. It is a mirror image of this case. It is completely on point and dispositive. At 746, it explains in the facts of the case when Blair reached under the seat. It says, quote, Blair yelled at him to inquire why he had been pulled over. Officer Holmes replied, tag light. Officer Holmes again approached Blair's car to explain the violation. Blair continued to question why he had been stopped. Officer Holmes testified during this time, Blair was reaching under seats and toward his ankle area. Officer Holmes instructed Blair to stop reaching, backed away from the car, and returned to his patrol car. He was clearly at the driver's side window, just as was Officer Lane in this case. Lane is at the passenger side. Passenger side. But what's important about this, what this officer did, and the court ruled it was an unconstitutional Terry stop, he went back to his car. He didn't point a gun and say, get out of the vehicle. He didn't handcuff him immediately. And the other thing why this is so directly on point, it was for a license tag light violation. So, again, you have another protection. I mean, there was probable cause. His light was out. But in Blair, just for the reasons you gave, the officer doesn't rely on fear for his own safety. If he had, he wouldn't have done exactly what you said. Blair is a case about, do you have enough of these indicia to have reasonable suspicion of drugs, not of safety? And, again, let's look at the Terry Patz standard. It has to be reasonable, least intrusive, under the circumstances. Ramos-Torres, Sixth Circuit case. In this case, and Penelas says you've got to look at the purpose of the stop, a lane change. So if we discount the cell phones, which you've got to discount under Townsend and Delano, or we win automatically. Respectfully. I'm not telling you we win. But all you would have is him putting his hand by a car seat. But putting your hand out of sight in a way that, again, you've got to go back to me, is that pretextual? That is, did the officer react the way he did because he had no fear for his safety? He just decided he was going to jack this guy around. And that's where the district judge deference to a finding seems to me to be strongest. The reason I'm pushing back against Blair is that if, in Blair, everything had been the same, but they were trying to justify it on safety grounds and this court had knocked that down, then I think you'd have a strong point. But here, if you look at Townsend, which I wrote, Townsend, they had ten things and we knocked them all down. In Blair, it's the same thing. They're trying to put things together to make a drug suspicion case, not an officer safety case. Well, it's interesting. And if you look at the district court opinion, and they justify handcuffing Mr. Bost, even though it was an offense that does not require arrest under Tennessee law. He cites Harted, Ashley, Heath, Hurst, Boyette, Powell. All those cases are people that were armed, known to carry weapons, were allegedly involved in a carjacking, a much different scenario. And the relevance is we have to look at the totality of the circumstances in this case. And what we're going to do is basically eviscerate the constitutional protection of a Terry stop, of Ramos-Torres, because if you put your hand there, and all officers have to be trained to do is, I'm scared. I fear for my safety because your hand's there. And the thing I would ask you all to recall. That's why we have district judges to see whether that's believable or not. And Ms. Davidson was also respectfully incorrect when she said you could see his hand. You can't see that hand in that video. And it's less than two seconds. Now, are we going to... Pardon me? I said it doesn't take long, but go ahead. I didn't understand how you were saying that her distinguishment on the facts of Blair was not correct. I'm just reading this section. It says, Officer Holmes collected his license and returned to the car to run the records check. During this time, Officer Holmes observed that he was a little fidgety, that Blair was fidgety, and reaching underneath the seats of his vehicle. Okay, so what she said, your opposing counsel said, was he was disobeying the commands and then reaching. That's not the same as in Blair from what I just read. Respectfully, I may have misunderstood Ms. Davidson. I thought she said before he stopped the vehicle, he was making movements with his hand. And my attempt to distinguish it was it was made while the officer was at the window of the vehicle. I think there are two different things happening. In this case, the officer is at the car. There's a disobeying of commands and a reaching between the seats. In Blair, he's back in his vehicle, and he sees that there's some reaching going on. I think the officer is not in the same proximity. Isn't that true? I think partly true and partly not true, because I think in that case the officer was at the vehicle, went back to his vehicle, and then came back again. And they were actually having a dialogue as he was walking between the patrol car and the Blair vehicle. All right. Yes. And I think I'm out of time, but let's... Just briefly, I mean, doesn't an officer have reason, or this officer, wouldn't this officer have reason to feel for his safety when he's in this close proximity and Mr. Bost moves his hands so that the officer can't see them anymore? And then it does seem that he's slow to bring his hands back into view, and that's why the officer repeats it three times and gets very agitated. Don't those circumstances, close proximity, can't see his hands, slow to bring the hands back into view, don't those support the district court's determination that the officer had reason to fear for his safety? Well, Judge Kethledge, that's the essence of this case, and you have to look at the totality of the circumstances, what's reasonable and least intrusive. Those things do support a concern that he's armed and dangerous. But I would ask the court to look at also to consider the fact... I mean, do those three things support? I mean, yeah, at least... In and of itself, if an officer is yelling at you and screaming and it takes you two or three seconds, unless he thinks you're an African-American drug dealer, I think he wouldn't have been scared. But look at Saperstein, look at Mesa, look at Eureta, all those cases that say it's normal to act nervous, to be fidgety, to do things like that. I mean, the circumstances I just described aren't nervousness, quite the contrary. And again, if we look at the circumstances of the video, I think when that officer was yelling at him, it was a very short time before he removed his hand. So I guess now, and I hope not, that we're going to have juris... I hope we don't have jurisprudence that says if it takes you two seconds, not three seconds, or five seconds, not two seconds, then officers are reasonable to assume you have a firearm, point a weapon, get you out and cuff you immediately for very benign minor traffic violations. I think you have to look at more. If we isolate that fact, it's not enough. If you look at the three cell phones under Townsend that you wrote, you don't prevail. So... Counsel, I think your time's expired, unless Judge Rustani, any other questions? No. Judge Kesslidge? I think the time's expired. Thank you, counsel. That case will be submitted, and the clerk may adjourn court. The court is now adjourned.